SIEGMUND T. MEYER AND ASHER T. MEYER, APPELLANTS,
*v.* JOHN AMIDON, RESPONDENT.

*False statement — when a jury may infer an intent to defraud the inquirer — when the question should be submitted to the jury.*

When a statement is made by a party who assumes or intends to convey the impression that he has actual knowledge of its truth, though conscious that he has no such knowledge, and when he knows that the inquirer relies and is about to act upon his statement, a jury may be justified in finding, on proof of the falsity of the statement, and of the injury sustained by the party relying thereon, that the party making the same intended to deceive and defraud the inquirer.

Where the party making such statement testifies that he simply undertook to repeat what had been told him, while the party to whom it was made testifies that the statement was positive and made as being within the personal knowledge of the party making it, *held*, that the question should be submitted to the jury.

APPEAL from a judgment entered on a dismissal of the complaint ordered at the Circuit.

*Everett P. Wheeler*, for the appellants.

*A. J. Vanderpoel*, for the respondent.

DAVIS, P. J.:

At the close of the evidence on both sides, on the trial of this case, the court, on motion of the defendant's counsel, dismissed the plaintiffs' complaint and refused to submit any question in the case to the jury. The plaintiffs' counsel excepted to the order of dismissal, and made several requests for leave to go to the jury upon several questions of fact claimed by him to arise upon the evidence.

The only question to be considered upon this appeal is, whether there was any evidence in the case which ought to have been submitted to the jury for their finding upon any question of fact.

The action was brought to recover damages for alleged fraudulent misrepresentations in respect of the credit and standing of the firm of Blackmer, Walker & Co., who were merchants doing business at Boston, Mass. The plaintiffs were merchants doing business in

the city of New York. The defendant was a member of the firm of Amidon, Leavitt & Co., who also were merchants doing business in the city of New York. It was shown in evidence that Blackmer, Walker & Co., applied to the plaintiffs' firm to make purchases of goods upon credit, and that the plaintiffs refused to sell to them without satisfactory reference as to their responsibility. The plaintiffs were thereupon referred to the defendants' firm for information on that subject, and an employe of the plaintiff was then sent to the defendants' firm to obtain such information. He was referred by a member of the firm to the defendant, and his testimony as to what took place between himself and the defendant is as follows:

"I stated to Mr. Amidon that I had called to obtain reference about Blackmer, Walker & Co.; he told me the firm was perfectly responsible; that they had $21,000 capital equally contributed; that Mr. Southworth was worth, outside of his business, from $25,000 to $50,000, and that they had sold them $6,000 worth on credit, and they would gladly sell them $10,000 worth; he told me they had sold them on six months' time; he told me Blackmer, Walker & Co., owed them at that time $6,000; that is all I recollect that was said between Mr. Amidon and myself on that occasion."

The plaintiffs sold a bill of goods amounting to several thousand dollars, relying, as they state, upon these representations of the defendant. It was shown to be untrue that the firm of Blackmer, Walker & Co., had any such amount of capital in their business, and that Mr. Southworth, one of the partners, was worth no such sum outside of his business as that stated in the representation; and it was shown also that their indebtedness to Amidon, Leavitt & Co., was not at that time $6,000, but was only about $4,000; that the firm of Blackmer, Walker & Co., had no capital beyond three notes of the individual partners, each for $5,000, payable in six months, but never paid, and $2,000 in merchandise put in by one of the partners; that in about three months after the sale of the goods by plaintiffs to them, they became insolvent, paying to their general creditors but about ten cents on the dollar, except the firm of Amidon, Leavitt & Co., who were fully paid and secured beyond their actual indebtedness, and

who afterwards repaid to one of the firm, the sum of about $100, the excess received beyond such indebtedness. There was no direct proof in the case that the defendant knew at the time the alleged representations were made, that they were untrue, or that he intended in making the same to deceive the plaintiffs, or enable Blackmer, Walker & Co., to perpetrate a fraud upon them. The defendant's testimony as to what took place between him and the employe of the plaintiffs' when the latter came to him to inquire concerning the responsibility of Blackmer, Walker & Co., was as follows: "He said he came in to inquire in reference to the firm of Blackmer, Walker & Co.; I told him that Mr. Blackmer and Mr. Walker came into our store sometime in February, I think, and represented that they wanted to buy some goods of us; they said they had formed the firm of Blackmer, Walker & Co.; I told Mr. Meyer that they came in there and said they had formed the firm of Blackmer, Walker & Co., and I told Mr. Meyer the statement that Mr. Walker had made to me; I asked Walker to make a statement of how their firm started; he said they started with a capital of $21,000; I asked him if that was paid in, and he said it was; he went on and told me how it was paid in; he said that Mr. Blackmer put his in in stock; he and Mr. Southworth in cash; I told Meyer I asked Mr. Walker if that was paid in and he said it was; he said he, himself, had $20,000 outside of his business, and owned some real estate in Lowell, and Mr. Southworth had from $30,000 to $40,000 outside of the business; Meyer asked me whether we sold them, and I told him we sold them, and from the statement they made we considered them good; that we were willing to sell them; I did consider them good; I told him I thought we would be willing to sell them from $8,000 to $10,000 from the statement they made." The defendant further testified that he had no doubt at that time of the responsibility of the firm of Blackmer, Walker & Co., for $7,000, $8,000 or $10,000, and that he thought he would not have hesitated to have sold them $8,000 or $10,000; that he believed what Mr. Walker told him, and that that was what he stated to Mr. Meyer.

It will be observed that the testimony of these two witnesses is in direct conflict as to the statements that were made. The one testified that the statements were positive in their character and were affirmations of matters of fact, as though within the personal

knowledge of the defendant; the other that the statements were simply repetitions of representations made by a member of the firm of Blackmer, Walker & Co., to the defendant, upon which he had relied in making sales to that firm.

It became a very important question of fact in the case as to which of these witnesses the jury believed, because if the jury found that the defendant had made the statements in respect to the capital and condition of the firm of Blackmer, Walker & Co., and of the property of Mr. Southworth, one of its members, as matters of fact within his own knowledge, or that he assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious at the time that he had no such knowledge, they would have been justified in finding the further necessary fact of an intention to deceive the plaintiff.

When this case was before the Court of Appeals after a former trial (45 N. Y., 169), it was held that the learned referee before whom it had been tried had failed to find that the representations were fraudulent, or that the defendant believed or had reason to believe when he made them that they were false, or that he assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge. And the case was sent back for retrial because the referee, as that court held, upon findings merely that the representations made by the defendant were false, and that the plaintiffs were induced by them to give credit to the subject of them, and that damage ensued therefrom to the plaintiffs, had held as matter of law that the plaintiff was entitled to recover without a further finding that the defendant had any intention to deceive or defraud the plaintiffs. The referee had distinctly refused to pass upon that question as matter of fact, and therefore the court held that it could not be assumed by them that he had found any fact beyond what was actually set forth in his report.

There is nothing in the decision of the Court of Appeals that at all impairs the settled principle in such cases as this, that where a statement is made by a party who assumes or intends to convey the impression that he has actual knowledge of its truth, being conscious that he has no such knowledge, and knowing that the inquirer relies and is about to act upon his statement, a jury may

be justified in finding, on proof of the falsity of the statement and of the injury sustained, that the party making the same intended to deceive and defraud the injured party.

The intent is, of course, a question of fact to be found by a jury, and not one of law to be disposed of by a court; and the jury may infer that a party who assumes or intends to convey the impression that he has actual knowledge of the truth of his own assertions, knowing that he has no such knowledge, is animated by a fraudulent or evil design *and intends* the injury that is produced by the falsity of his statements. This is, we think, a well established principle of law in cases of this character, with which the decision of this case by the Court of Appeals is in no respect in conflict. (*Oberlander* v. *Spiess*, 45 N. Y., 175 ; *Meyer* v. *Amidon*, 45 id., 169 ; *Marsh* v. *Falker*, 40 id., 562 ; *Duffany* v. *Ferguson*, 66 id., 482.)

If it had been submitted to the jury to find in this case whether the defendant represented the condition and credit of the firm of Blackmer, Walker & Co., as matters of fact within his knowledge, or merely stated to the plaintiff's agent what members of that firm had asserted to him in those respects, the jury would doubtless have been instructed that if they found the assertions were positive, as of matters within the knowledge of the defendant, it would be their further duty to inquire whether he made them, knowing that he had no knowledge of their truth, and that if they found that he did make them, conscious that he had no such knowledge, that it would be in that case for them to say whether or not the intent to deceive was thereby shown to their satisfaction, and that the plaintiff was entitled to recover, if in their opinion these three things concurred.

We think it was the right of the plaintiffs to have had the case submitted to the jury to pass upon these several questions and inferences, and that it was error to refuse it. The defendant himself testified in substance that he had no knowledge on the subject except as derived from the statements made to him by Walker, one of the firm. It would not, therefore, have been an embarrassing question for the jury to have found that the representations, if positively made as matters of fact, were made without any other knowledge of their truth than the mere assertions of one of the members of the firm. Hence it cannot be said that the court was justified in taking from the jury the question of fact as to what was the character of

the statement actually made by the defendant; nor could it with propriety take from the jury the question whether the defendant had any such knowledge as justified the making of a positive affirmative statement; and the question of intent being one of inference from the character of the statement, the absence of actual knowledge, and from the other circumstances of the case, was equally the property of the jury.

It is by no means clear, and we do not therefore mean to intimate any opinion as to what ought to have been the verdict of the jury; we only mean to say that the case made by the evidence was one which should have been submitted to the jury for their determination.

Some other circumstances were shown to which reference has not been made, such as the relationship between the defendant and one of the members of the firm; the alleged refusal of the defendant's firm to fill subsequent orders of Blackmer, Walker & Co., and the manner in which their indebtedness to the defendant's firm was secured before its maturity. These circumstances and their explanation as given by the defendant and his witnesses, were, of course, proper matters for consideration by the jury who were entitled to give to them such weight as in their judgment they required.

A careful consideration of the case has thus led us to the conclusion that the court erred in taking it altogether from the jury, and that for that error the judgment should be reversed and a new trial ordered, with costs to abide the event.

DANIELS, J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment reversed, new trial ordered, costs to abide the event.