WILLIAM R. HALL, Plaintiff, *v.* WILLIAM S. GRAYS, Defendant.

Supreme Court, Tompkins County, October 19, 1928.

*J. T. & C. H. Gardner*, for the plaintiff.

*J. J. McGuire*, for the defendant.

RHODES, J. This action is brought to foreclose a purchase-money mortgage upon a farm sold by plaintiff to defendant. The amount due on the mortgage is undisputed, being the sum of $1,500 in the form of notes, with interest thereon from August 15, 1926. Defendant interposed a counterclaim seeking to recover damages claimed to have been sustained by reason of alleged misrepresentations made by the plaintiff to the defendant to induce the purchase of the farm. The property in question is situate in the village of Etna, Tompkins county, N. Y. The farm contained about 295 acres. Plaintiff, at the time of the sale, owned and resided on the farm. Defendant was a minister residing in Gretna, Fla., who desired to purchase a farm and came north and interviewed representatives of the Strout Farm Agency, with which plaintiff had listed the farm for sale. Defendant testified that he spent part of his boyhood upon a farm but had not much knowledge of farming. In company with the representatives of the farm agency, he visited the farm on one or two occasions, looked it over and talked with the plaintiff, and on July 6, 1922, a land contract was executed between the parties for the sale of the premises. Thereafter, and about July fifteenth, defendant received from plaintiff a deed of the premises, made certain payments as provided for in the contract, and executed five notes of $500 each for which said mortgage was given as security. Two of said notes have been paid, leaving a balance due of $1,500 and interest as aforesaid.

Defendant claims that the representations made by plaintiff to him which induced him to purchase the farm were that the farm contained 200 acres of tillable land; that there were 25 acres sowed to oats; that the two silos were filled with ensilage in good, wholesome condition and that the plaintiff further promised and agreed that he would care for and harvest the crops then growing on said farm which matured before August 15, 1922. Defendant testified that these statements and agreements were made by the plaintiff; plaintiff denied making them, but the evidence indicates that the plaintiff did state that the farm contained 200 acres of tillable land and that there were 25 acres sown to oats and that the two silos were filled with good ensilage. As a matter of fact, the actual tillable land on the farm appears to have been about 141 acres, and instead of there being 25 acres sown to oats, the area thus sown was about 12 acres. Defendant says that in reliance upon said statements and believing them to be true, he was induced to purchase the property. I do not think the facts bear out the defendant's contention in this respect. Before he entered into the contract he visited the farm, walked over it and

saw all of it. No doubt he could not tell accurately without a survey as to the exact number of acres that were tillable, and the exact number of acres sown to oats, but he saw the whole layout and had opportunity to examine it in its entirety. He saw what he was buying and he bought what he saw. Thereafter and after he claims to have discovered that he had been cheated, he paid two of the notes for $500 each. The making of such payments is significant as bearing upon defendant's credibility as to his statement that the representations as to the acreage induced him to make the purchase. I do not think he was induced thereby, and, therefore, he should not be permitted to recover damages for the shortage as to the acreage. (*Taylor* v. *Guest*, 58 N. Y. 262; *Hotchkin* v. *Third Nat. Bank*, 127 id. 329.) Furthermore, I think it must be held that by paying the two notes of $500 each after he discovered the falsity of the representations, defendant has waived his right to claim damages. The defendant in his counterclaim asserts that he was damaged to the extent of $3,650. After discovering the fraud, he still owed upon the notes in question the sum of $2,500, so that according to his contention there was a balance then due in his favor of over $1,000. With the facts before him he made further payments of the two notes and I think thereby manifested an intent to waive his right to damages. Perhaps it did not amount to a waiver as a matter of law, but I think, upon the whole record, it is established as a fact that he intended to waive damages. (See *Pryor* v. *Foster*, 130 N. Y. 171.)

As to defendant's claim to recover damages for failure of the plaintiff to harvest the crops, while there is some proof as to the quantity of oats spoiled, there is no proof as to the value thereof, and as to the hay, while there is some evidence showing that fifty acres of hay were uncut, there is no proof showing the quantity of hay thereon. As the burden of proof is upon the defendant to establish his counterclaim, he must fail as to these items.

The foregoing disposes of all the items of damage except as to the ensilage. That was in the silos and the defendant had no opportunity to inspect it until long after he had made the payments above mentioned. The ensilage was represented to him as being wholesome and good. As a matter of fact only about 40 tons of the entire 120 tons were good. This was worth $4 a ton, or $320 for the amount of ensilage which was spoiled. This amount should be awarded to the defendant upon the counterclaim. The other items of the counterclaim should be disallowed and plaintiff should be awarded judgment upon his complaint in accordance herewith, with costs.