CHARLES L. DALY, Trustee, Plaintiff in Error, *vs.* SIDNEY M. KOHN *et al.* Defendants in Error.

*Opinion filed April 23, 1908—Rehearing denied June 4, 1908.*

1. BANKRUPTCY—*when a deed is invalid as to trustee.* A deed from children to their mother, which was executed after two of the children were bankrupt, is invalid as against their trustee in bankruptcy where there was no consideration for the conveyance, even though there may have been a prior valid and binding agreement to make the conveyance when the youngest child should attain majority.

2. SAME—*debtor must pay his debts before he can give property away.* One who is insolvent cannot defeat the rights of his creditors by giving away his property, no matter what promises he has made to that effect nor what form the gift assumes.

3. EVIDENCE—*a parol agreement to make conveyance must be clearly proven.* A parol agreement by children to join in conveying their interest in land to their mother cannot be held to be binding unless the agreement is clear and certain in its terms and established by definite and unquestioned testimony, and not merely by declarations of the promisors to third persons.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

ALDEN, LATHAM & YOUNG, for plaintiff in error.

DAVID J. LYON, and HENRY M. SELIGMAN, for defendants in error.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by Charles L. Daly, trustee in bankruptcy of Sidney M. and Edward A. Kohn, in the superior court of Cook county, on February 6, 1903, against Sidney M. Kohn, Edward A. Kohn and Katie Kohn, to set aside, in part, a conveyance bearing date September 24, 1901, and filed for record in the recorder's office of Cook county on September 2, 1902, by which Sidney M. and Edward A. Kohn, and their three sisters, conveyed to Katie Kohn the south 201.5/12 feet of lot 200, in Bronson's addition to the city of Chicago, and known as Nos. 375, 377 and 379 Division street. Answers and replications were filed and the cause was referred to a master in chancery to take the evidence and report his conclusions. The master filed a report, and the court, after overruling exceptions thereto, entered a decree dismissing the bill for want of equity, and the complainant has sued out a writ of error from this court to review said decree.

It appears from the pleadings, evidence and master's report that Marcus Kohn died intestate in the year 1883, seized of said premises in fee simple; that he left him surviving Katie Kohn, his widow, and Bertha, Rose, Sidney M., Edward A. and Clara, his children and sole heirs-at-law; that Katie Kohn was appointed administratrix of the estate of Marcus Kohn, deceased, and guardian of his minor children; that in the spring of 1898 Sidney M. and Edward A. Kohn opened a grocery store at 231 Rush street, in the city of Chicago; that Sidney M. contributed $410 with which to start said business, Edward A. $126, and they borrowed $1000 in cash of their mother, Katie Kohn, which went into said business; that Marcus Kohn, at the time of his death, was engaged in the grocery business at 375 Division street; that Joseph M. Eisner, a brother of said Katie Kohn, succeeded to said business; that March 4, 1901, Eisner sold

said business to Sidney M. and Edward A. Kohn on time, for the sum of $3700, and they moved their stock from Rush street to 375 Division street and continued in the grocery business at the latter place until September 2, 1902, when they were declared to be bankrupts and Charles L. Daly was appointed their trustee in bankruptcy; that at the time Sidney M. Kohn and Edward A. Kohn were declared bankrupts they owed $11,180.41; that the trustee of Sidney M. and Edward A. Kohn realized from the sale of their tangible assets the sum of $1878.75 and collected of their book accounts between $700 and $800, which represented their entire estate other than their interest in said real estate; that on September 24, 1901, the five children of Katie Kohn executed and delivered to her a deed conveying to her the premises known as 375, 377 and 379 Division street for and in consideration of one dollar and love and affection, which deed Katie Kohn kept in her safety deposit box until the morning of the day upon which Sidney M. and Edward A. Kohn became bankrupts, without recording the same, which deed, on the morning Sidney M. and Edward A. Kohn became bankrupts, was filed by Katie Kohn for record and recorded in the office of the recorder of deeds of Cook county.

The master in chancery found, and his finding is fully supported by the evidence, that Sidney M. and Edward A. Kohn, on the date of the execution and delivery of said deed and on the date upon which said deed was recorded, were insolvent. The master, however, found that said deed was executed by the children of Katie Kohn and delivered to her by them pursuant to an oral agreement made between her and her children, entered into prior to the execution of the deed, that said children would convey said premises to her upon the youngest child of Marcus Kohn, deceased, attaining her majority, which finding was approved by the court and the deed held to be a valid deed conveying to Katie Kohn the said premises, freed from the rights of the

creditors of Sidney M. and Edward A. Kohn. The main questions for decision, therefore, arising upon this record, are, first, does the evidence establish an agreement by the children of Katie Kohn to convey said premises to her upon her youngest child attaining her majority; and secondly, if such agreement is established, is the conveyance a good and valid conveyance as against the trustee in bankruptcy of Sidney M. and Edward A. Kohn.

We think it clear that such agreement, in order to be binding, must be established by clear and satisfactory evidence, in view of the fact that it appears that the grantors Sidney M. and Edward A. Kohn were insolvent at the time said premises were conveyed to Katie Kohn. The only evidence found in this record tending in any way to establish such agreement to convey is found in the testimony of Sidney M. Kohn, Edward A. Kohn, Henry M. Seligman and Herman Wollenberger, and which is as follows:

Sidney M. Kohn testified as follows:

Q. "Had there been any talk between you and your brother and your sister about signing this deed, prior to the time it was signed?

A. "Yes, sir.

Q. "How long a period prior to the time of the signing of this deed?

A. "A considerable time.

Q. "Was that conversation between you and your brother and all your sisters?

A. "Yes, sir.

Q. "I will ask you whether or not this deed was made pursuant to an agreement between you and your brother and all of your sisters conveying this property to your mother?

A. "Yes, sir."

Edward M. Kohn testified as follows:

Q. "Had you had a conversation with your brother or sisters relative to conveying this property to your mother prior to the making of this deed?

A. "Yes, sir.

Q. "How long before?

A. "I do not remember the exact date.

Q. "About how long a time—I am not asking you as to a minute or second—about how long?

A. "Eight or nine months previous to that time—at the time my sister came here from Denver.

Q. "What was done at that time?

A. "We agreed among ourselves that we children would transfer this property of ours to my mother if it was agreeable to all of us, and it was agreeable, and it was decided. to sign it over to her.

Q. "Is it not a fact that your youngest sister was not then of age?

A. "Yes, sir.

Q. "Is not that the reason the conveyance was not made at that time?

A. "Yes, sir."

Henry M. Seligman, who was the attorney who represented Mrs. Kohn in the settlement of her husband's estate, testified as follows:

Q. "State if you ever heard any conversation in the family or among the children as to the purpose of the children to convey their interest in the father's estate to their mother.

A. "I did.

Q. "When?

A. "The first conversation I recollect at present took place in my presence in the beginning of 1898.

Q. "What was the occasion of that conversation, if you recollect?

A. "It was prior to the closing up of the accounts of Katie Kohn, as guardian of Sidney and Eddie Kohn, in the probate court. Both of these accounts were closed up at the same time—after Eddie became of age.

Q. "Who of the children of Katie Kohn were present at that conversation, if you recollect?

A. "I recall the presence of Sidney, Eddie, Rose and Bertha—not Bertha—and Rose. ˙ I do not recollect whether Clara and Bertha were present or not.

Q. "Who do you mean by Rose?

A. "I mean Mrs. Wollenberger, a daughter of Katie Kohn.

Q. "What was said to you on that occasion by these children concerning this matter?

A. "Sidney said at that time, 'We are all going to turn our real estate over to mother as soon as Clara becomes of age; we have made an agreement amongst ourselves.' "

And Herman Wollenberger, a son-in-law of Mrs. Kohn, testified as follows:

Q. "Mr. Wollenberger, I will ask you if you know of any understanding or agreement among the brothers and sisters of your wife, including your wife, to convey their interest in certain real estate which they had inherited from their father, to their mother?

A. "Yes, sir.

Q. "Mr. Wollenberger, how long ago did you first hear that matter talked of in the family?

A. "In December, 1895.

Q. "What children did you hear discussing it at that time?

A. "Bertha Kohn and my wife were present. I am sure of those two; there may have been some of the others.

Q. "Did you hear it discussed in conversations at which S. and E. Kohn were present?

A. "I couldn't tell you."

This testimony is very unsatisfactory and unconvincing, and we think falls far short of establishing that an agreement was entered into between the children of Mrs. Kohn and Mrs. Kohn, prior to the execution of said deed, whereby they agreed to convey to her said real estate upon her youngest child attaining her majority, and that said deed was executed and delivered by the five children to Mrs. Kohn in

pursuance of said agreement. None of the witnesses who testified upon the subject claim they were present when the agreement was made. They do not agree as to the time when such agreement was made. Edward A. Kohn fixed the time at about eight or·nine months prior to the execution of the deed. Henry M. Seligman first heard of the agreement in 1898, and Wollenberger in December, 1895. The witnesses do not state who was present when the agreement was made, nor do they state the terms of the agreement. At most, the testimony of the witnesses consists of a statement of their conclusions that the children of Katie Kohn, or some of them, out of the presence of Katie Kohn, expressed an intention at some future time to convey said property to their mother, Katie Kohn.

This court, in a number of cases where a child has sought to enforce the specific performance against a parent of a parol contract to convey land,—and we think the rule there announced applicable to the case at bar,—has pointed out the character of proof which is necessary to establish the right to a decree of specific performance against the parent or his heirs, and it has uniformly been held that such agreement must be clear and certain in its terms and be established by testimony of an undoubted character which is clear, definite and unquestioned, and that declarations made by a promisor or donor to third persons do not constitute such clear, definite and unequivocal testimony. *Worth* v. *Worth,* 84 Ill. 442; *Clark* v. *Clark,* 122 id. 388; *Geer* v. *Goudy,* 174 id. 514; *Seitman* v. *Seitman,* 204 id. 504; *Standard* v. *Standard,* 223 id. 255.

It is said, however, that the agreement to convey in this case has been executed by the children by the execution and delivery of a deed to their mother, and that while a court of equity might not have required the children to convey, a conveyance having been made, a court of chancery will not set aside the conveyance at the suit of the trustee in bankruptcy of Sidney M. and Edward A. Kohn. It is doubtless

true, the deed having been made, it is binding upon the grantors. The question here, however, to be determined is, is it binding upon the trustee in bankruptcy of Sidney M. and Edward A. Kohn, who represents the creditors of Sidney M. and Edward A. Kohn? It has uniformly been held by this court that a voluntary conveyance of a large part of a debtor's property when he is insolvent is void as against his creditors. (*Emerson* v. *Bemis,* 69 Ill. 537; *Patterson* v. *McKinney,* 97 id. 41; *Morrill* v. *Kilner,* 113 id. 318; *Marmon* v. *Harwood,* 124 id. 104.) The rule thus announced, we think, must be applied and enforced in this case, unless the conveyance by Sidney M. and Edward A. Kohn of their interest in said premises to Katie Kohn was made pursuant to a valid and binding agreement between Sidney M., Edward A. and Katie Kohn,—that is, an agreement for the transfer of said premises from the children of Marcus Kohn to Katie Kohn which could have been enforced by Katie Kohn as against Sidney M. and Edward A. Kohn. As the evidence failed to establish a valid and enforcible agreement for the transfer of the interest of Sidney M. and Edward A. Kohn, the transfer of the interest of Sidney M. and Edward A. Kohn to Katie Kohn was fraudulent in law as to the creditors of Sidney M. and Edward A. Kohn, and such conveyance should have been set aside by the superior court at the suit of their trustee in bankruptcy.

It is, however, apparent, we think, that even if the evidence showed a valid agreement between the children of Katie Kohn and herself that said children should convey said premises to Katie Kohn upon the youngest child attaining her majority, such conveyance, when made, would not be binding upon the creditors of Sidney M. and Edward A. Kohn unless said agreement was supported by a good and valuable consideration. An agreement that said children would convey said premises to their mother upon the youngest child attaining her majority would amount to no more

than an agreement that the children would give said property to their mother upon the youngest child of Marcus Kohn attaining her majority. A debtor must be just before he can be generous and must pay his debts before he can give his property away, regardless of what promises he may have made to give it away or the form the gift may assume, if executed while he is insolvent.

The cases relied upon by the defendants in error are not similar, in principle, to the case at bar. They are cases where a parent has promised to convey lands to a child when he was solvent, and the child, relying upon said promise, has entered into possession of the lands and made valuable and lasting improvements thereon, and subsequently the parent, or, after his death, his heirs, have repudiated said agreement or a creditor of the parent has attacked such conveyance, in which class of cases a court of chancery has frequently held the agreement by the parent, although resting in parol, could be enforced. (*Patterson* v. *McKinney, supra; Gudgel* v. *Kitterman,* 108 Ill. 50; *Norton* v. *Mallory,* 63 N. Y. 434; *Graves* v. *Graves,* 46 Ky. (7 B. Mon.) 213.) But no case has been cited by counsel, and we have been unable to find one, where a court of chancery has sustained a conveyance made by an insolvent debtor to a near relative without consideration, the effect of which was to prevent his creditors from enforcing the collection of their just debts, regardless of the form which the transaction may have assumed.

From an examination of this record we are impressed with the view that the conveyance sought to be set aside is the ordinary one where a failing and insolvent debtor has sought to place his interest in real estate out of the reach of his creditors by conveying the same to a near relative. While the color given to this transaction by the defendants in error is somewhat out of the ordinary form which such transactions assume, its real object is apparent, and a court of equity will look, not to the form of the transaction, but

to its substance, in determining whether or not a conveyance made by a failing debtor to a near relative is valid or invalid.

The decree of the superior court will be reversed and the cause will be remanded to that court, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*